IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| Rose Brown, ) | |
|    Plaintiff, ) | Civil Action No. 9:14-2841-DCN-KFM |
|        vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| The OMO Group, Inc., ) | |
|    Defendant and Third Party Plaintiff, ) | |
|        vs. ) | |
| U.S. Department of the Navy, ) | |
|    Third Party Defendant. ) | |

       This matter is before the court on the motion to dismiss of third party defendant U.S. Department of the Navy ("the Navy") (doc. 40) and the motion for summary judgment of defendant and third party plaintiff The OMO Group, Inc. ("OMO") (doc. 44). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**PROCEDURAL HISTORY**

       The plaintiff filed a complaint on July 15, 2014, against OMO, alleging pregnancy and race discrimination in violation of the Pregnancy Discrimination Act of 1978 ("PDA") and Title VII of the Civil Rights Act of 1964, as amended, along with a state law claim for breach of contract (doc. 1). On January 16, 2015, OMO filed an amended answer and third party complaint alleging causes of action for breach of contract and indemnity against the Navy (doc. 18). The Navy filed a motion to dismiss for lack of jurisdiction on May 24, 2016 (doc. 40). OMO filed a response in opposition on June 21, 2016 (doc. 51), and the Navy filed a reply on June 27, 2016 (doc. 52). OMO filed a motion for summary

judgment on June 1, 2016 (doc. 44), to which the plaintiff filed a response in opposition on June 20, 2016 (doc. 47), and OMO filed a reply on June 30, 2016 (doc. 54). The Navy filed opposition to OMO's motion for summary judgment on July 11, 2016 (doc. 56), and OMO filed a reply on July 21, 2016 (doc. 58).

## **FACTS PRESENTED**

On January 30, 2012, the plaintiff, who is a black female, began working as a dental hygienist for OMO, a federal contractor providing dental workers for the Navy's dental clinic at Parris Island in Beaufort, South Carolina (doc. 44-2, Brown dep. 27-28; doc. 47-1, pl. aff. ¶ 1; doc. 44-15, Navy contract). In April 2012, the plaintiff found out that she was pregnant (doc. 47-1 pl. aff. ¶ 2). On June 23, 2012, she needed emergency surgery related to the pregnancy (doc. 44-2, pl. dep. 39-40; doc. 47-1, pl. aff. ¶ 3). The Navy's leave without pay ("LWOP") policy only allows a maximum of 40 hours LWOP (doc. 44-15 at 4, Navy contract ¶ C.3.7). The plaintiff states that on Monday, June 25, 2012, she contacted Janie Godina, the Human Resources Coordinator for OMO, to inform her about the surgery (doc. 47-2, pl. aff. ¶ 3). She states that she was told to take the time she needed to get better. The time she was out was considered LWOP (*id.*).

On July 2, 2012, the Navy conducted a performance review and found the plaintiff to be below average in two performance areas – productivity and individual interaction with military personnel (doc. 44-21, perf. rev.). The plaintiff signed the performance review on July 31, 2012 (*id.*). On July 17, 2012, the plaintiff received a verbal warning from Ms. Godina regarding her leave usage and LWOP status (doc. 47-1 at 9). On August 2, 2012, John Martin, Contract Specialist for OMO, sent the plaintiff a memorandum documenting a telephone call that same day wherein the plaintiff received her "final counseling from The OMO Group" (*id.* at 10-12). In that memo, Mr. Martin noted that the plaintiff was counseled on her below average rating in the performance review and was also counseled regarding an incident in which the plaintiff was told to see a ninth patient but refused to so because she understood she was only to see eight patients (*id.*). Mr. Martin

also counseled the plaintiff regarding her LWOP status, noting that a complaint "from the command" had been received (*id.*).

When her delivery was imminent in late November, the plaintiff was ordered to bed rest by her doctor (doc. 44-8, dr. note 11/28/12). In an email on November 27, 2012, Ms. Godina told the plaintiff that she had spoken to Deborah Meaut, the Navy's on-site Contracting Officer's Representative ("COR"), and had mentioned the plaintiff's "concern regarding [her] maternity leave time off" (doc. 47-1 at 28). Ms. Godina stated that the "OMO Group and Ms. Meaut agree on the 12 weeks of Maternity Leave available to you" and instructed the plaintiff to submit a leave request for the anticipated maternity leave (*id.*). The plaintiff submitted the leave request on November 28, 2012 (*id.* at 29), and the plaintiff's supervisor and department head, LCDR Jeffrey Alex Draude, gave written approval for the leave (*id.*; *see* doc. 58-2, Draude dep. 53).

In an email chain dated November 28-29, 2012, COR Meaut emailed Mr. Martin, noting that the plaintiff's department head had signed off on the plaintiff's leave request, but further stating that whether the plaintiff qualified for Family and Medical Leave Act ("FMLA") leave would need to be decided by OMO (doc. 44-17, 11/28-29/12 email chain). COR Meaut also noted that a written request from OMO to the Naval Hospital Beaufort was required for approval/disapproval (*id.*). COR Meaut also referred Mr. Martin to the contract provision providing that any health care worker who incurred more than 40 hours LWOP shall be replaced (*id.*). Mr. Martin replied, reminding COR Meaut that he had spoken with her "a few weeks back" about the plaintiff's leave period, and COR Meaut determined at that time that a replacement would not be necessary due to the length of time needed for credentialing (*id.*). Mr. Martin stated that he could "begin the search immediately for a replacement but assume it will still be a 5-6 week process for credentialing and approval" (*id.*). In response, COR Meaut noted that one year of employment was required for FLMLA leave, while the plaintiff "has only worked for OMO for 10 months." She further noted that the Navy "did work with Ms. Brown and your company back in July granting her approximately 80 hours LWOP due to her

3

hospitalization" (*id.*). COR Meaut concluded that while "empathetic to Ms. Brown's need for bed rest, our primary concern is for services. Once your company determines a plan of action, please let us know as soon as possible" (*id.*).

On November 29, 2012, Mr. Martin emailed the plaintiff "to clarify our position in reference to FMLA" with regard to the plaintiff's twelve weeks of maternity leave (doc. 44-5, emails 11/29-30/12). Mr. Martin noted that the plaintiff did not qualify for FMLA, and, therefore, OMO could not guarantee her position while she was on maternity leave. Mr. Martin stated that this was "due to the fact that [OMO is] required, under this Navy contract, to fill any of our positions that will be vacant for more than 40 hours" (*id.*). Mr. Martin noted that OMO would attempt to consider the plaintiff for employment at the same position and rate if the position still existed when she returned. The plaintiff was instructed to contact OMO during maternity leave regarding the status of her condition and when she could return to work (*id.*). In an email sent the next day, Mr. Martin documented a telephone call that the plaintiff had that day with Ms. Godina wherein it was explained to the plaintiff that her job was not guaranteed (*id.*). The plaintiff was instructed to check in at least bi-weekly while she was out on her twelve weeks of leave (*id.*).

On January 22, 2013, Navy COR John McDonald emailed Mr. Martin stating that since the plaintiff "is on LWOP for more than 40 hours, are we assuming Ms. Gugino will be the next full time Dental Hygienist[?]" (doc. 44-16, Navy email 1/22/13). The email attached "a portion of the contract that is specific to this situation" (*id.* (citing doc. 44-15 at 4, Navy contract ¶ C.3.7)). In a memorandum dated January 23, 2013, the Navy documented a conversation between Mr. Martin and COR McDonald wherein Mr. Martin "expressed his concern about replacing the plaintiff as she just had a new born child" (doc. 44-19, memo 1/23/13). COR McDonald noted that it was "a matter of coverage, in which she had already taken LWOP before her pregnancy due date, and keeping [the plaintiff] would need a waiver signed by the Contract Officer" (*id.*).

The Navy/OMO contract is a personal services contract, and as a health care worker ("HCW"), the plaintiff was "rendering personal services to the Government and shall

4

be subject to day-to-day supervision and control by Government personnel" (doc. 44-15 at 3, Navy contract ¶C.2.1 and C.2.3).  The contract provides:

> At the discretion of the Commanding Officer and subject to the advance approval by the supervisor, COR, and the contractor, the HCW shall enter a leave without pay (LWOP) status upon exhaustion of any leave balance.  Unless waived by the Contracting Officer, the Contractor shall replace any HCW who has been on LWOP status for a total of 40 hours per Task Order.  At the discretion of the Commanding Officer, LWOP taken in conjunction with family/medical leave or liberty leave is not subject to this limitation, but must be approved in advance by the Commanding Officer or designee.

(*Id.* at 4, Navy contract ¶ C.3.7).

A contractor who allows a contracted employee to accumulate more than 40 hours of LWOP without a waiver is in default of the Navy contract (doc. 56-2, Greybush-Mangroo dep. 5-6).  A waiver of the LWOP provision as to the plaintiff's employment was not requested by OMO (*id.* 12).  According to Olubga Omosowofa, the President of OMO, who is African-American "[i]t was obvious no waiver of the LWOP policy was being granted by the Navy officer," and it was clear OMO "really had no viable choice but to discharge [the plaintiff]" (doc. 44-20, Omosowofa aff. ¶¶ 7-9).

On January 23, 2013, Mr. Martin called the plaintiff and told her that she was terminated from employment "and the command at Parris Island decided they wanted to keep the temp because they 'didn't want any more problems'" (doc. 47-2, pl. aff. ¶ 16). When the plaintiff asked what kind of "problems," Mr. Martin replied that the plaintiff had excessive LWOP (*id.*).

> In her deposition, the plaintiff testified as follows:
>
> Plaintiff:  They said that I had – they considered that excessive leave, and that they weren't going to work with me during my maternity time, which is why I was terminated.
>
> Counsel:  So you've said "they" several times.  Is that – are you talking about Navy?
>
> Plaintiff:  The Navy.

>   Counsel:  Not OMO?
>
>   Plaintiff:  No.
>
>   Counsel:  So it was your understanding that the Navy made a decision that you had exceeded the leave that they were going to allow?
>
>   Plaintiff:  Correct.
>
>   Counsel:  And that's the reason you got let go?
>
>   Plaintiff:  Correct.
>
>   Counsel:  Prior to your reviewing those emails yesterday, did you understand that?
>
>   Plaintiff:  No, I did not.
>
>   Counsel:  Prior to reading those emails yesterday, did you believe that OMO had made the decision without input from the Navy?
>
>   Plaintiff:  I did not. I didn't believe that they - I knew that OMO - talking to Mr. Omo, he sounded like he did not want to terminate me and - but he said it was something that he had to do because he could not force me on someone that doesn't want me there.

(Doc. 44-2, pl. dep. 100-101).

>   Later in the deposition, she testified as follows:
>
>   Counsel:  Do you feel like anything they [OMO] told you in those two phone conversations was inaccurate or a misrepresentation of some sort?
>
>   Plaintiff:  On the 23rd and 24th?  No.
>
>   Counsel:  So you don't have any reason to believe that they [OMO] were not being honest with you in these two conversations on the 23rd and the 24th?
>
>   Plaintiff:  Correct.

(*Id.* 147).

## APPLICABLE LAW AND ANALYSIS

***The Navy's Motion to Dismiss for Lack of Subject Matter Jurisdiction***

In its amended answer and third party complaint, OMO alleges causes of action for breach of contract and indemnity against the Navy (doc. 18). Specifically, OMO alleges that the Navy breached its contract by requesting or requiring OMO to terminate the plaintiff's employment and seeks indemnity of its damages (*id.*). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Navy has moved for dismissal of OMO's third party complaint based upon lack of subject matter jurisdiction.

On a motion to dismiss pursuant to Rule 12(b)(1), "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999) (citation omitted). The instant action presents a claim against the federal government. It is axiomatic that the United States, as sovereign, may not be sued without its consent and that the existence of that consent is a prerequisite for jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Thus, relief against the United States requires a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The plaintiff bears the burden of showing that the United States has waived its immunity for this action. *McNutt v. General Motors Acceptance Corp*., 298 U.S. 178, 188 (1936).

The "United States' waiver of sovereign immunity with respect to contract claims is embodied in the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act, 28 U.S.C. § 1346(a)(2)." *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 833 F. Supp. 2d 524, 534 (E.D.N.C. 2011). "The Tucker Act confers jurisdiction only on the United States Court of Federal Claims to hear cases involving express or implied contracts with the United States. 28 U.S.C. § 1491(a)(1). The Little Tucker Act confers concurrent jurisdiction on the district courts to hear contract claims involving the United States that do not exceed $10,000. 28 U.S.C. § 1346(a)(2)." *Id*. Thus, jurisdiction over a contract claim is vested exclusively in the Federal Claims Court if the action is "against the United States, seek[s] monetary relief in excess of $10,000, and [is] founded upon ... [a] government contract."

*Portsmouth Redev. and Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983) (citing 28 U.S.C. §§ 1346(a)(2), 1491).

The Navy argues that, because just the back pay component of the plaintiff's damages is well in excess of $10,000, this court does not have subject matter jurisdiction over OMO's contract claim against the Navy, and it must instead be brought in the Court of Federal Claims (doc. 40-1). *See Huff v. U.S. Dept. of Army*, 508 F. Supp.2d 459, 463 (D. Md. 2007) ("Pursuant to the so-called 'Little Tucker Act,' 28 U.S.C. § 1346(a)(2), the district courts share original jurisdiction with the United States Court of Federal Claims over actions where the amount in controversy does not exceed $10,000. In actions exceeding this amount, the Court of Federal Claims has exclusive jurisdiction." (citing *Randall v. U.S.*, 95 F.3d 339, 347 (4th Cir. 1996)).

In response, OMO argues that this court may exercise supplemental jurisdiction over its claims against the Navy (doc. 51) as the claims against the Navy are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The undersigned disagrees. As the Navy argues in its reply (doc. 52 at 3-5), "the grant of jurisdiction found in § 1367 does not waive sovereign immunity." *New York v. Sebelius*, C.A. No. 1:07-CV-1003 GLS/DRH, 2009 WL 1834599, at *10 (N.D.N.Y. June 22, 2009) (citing *Pershing Div. of Donaldson, Lufkin & Jenrette Sec. v. United States*, 22 F.3d 741, 743-44 (7th Cir.1994); *Dia Nav. Co. v. Pomeroy*, 34 F.3d 1255, 1267 (3d Cir.1994); *Smith v. State Univ. of N.Y.*, No. 1:00-CV-1454, 2003 WL 1937208, at *7 (N.D.N.Y. Apr.23, 2003)).

"In order for the district court to hear this case on the merits, there must be both a waiver of sovereign immunity and a grant of jurisdiction to the district court." *Marcus Garvey Square, Inc., v. Winston Burnett Constr. Co.*, 595 F.2d 1126, 1131 (9th Cir. 1979). The circuit courts that have considered supplemental jurisdiction in light of the Tucker Act have determined that the supplemental jurisdiction statute does not waive sovereign immunity. For example, in *Dia Navigation Co., Inc., v. Pomeroy*, the Third Circuit held:

> [U]nder the Tucker Act, the United States Claims Court and district courts share original jurisdiction over nontort monetary claims against the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(2) (sometimes referred to as the "Little Tucker Act"). Original jurisdiction over such claims seeking more than $10,000 vests exclusively in the Claims Court. 28 U.S.C. § 1491 (the so-called "Big Tucker Act")."
>
> [The plaintiff] asserts that the Claims Court's exclusive jurisdiction is overridden by the Supplemental Jurisdiction Act. 28 U.S.C. § 1367. We reject this argument in light of the Tucker Act's explicit jurisdictional bar.

34 F.3d 1255, 1267 (3d Cir. 1994) (citations omitted).

> In *Wilkerson v. U.S.*, the Fifth Circuit held:
>
> Section 1367(a) . . . deals only with the federal courts' power to exercise subject matter jurisdiction over certain claims and does not operate as a waiver of the United States sovereign immunity. . . . As we have previously held, the doctrine of pendent jurisdiction cannot be used to waive the United States' sovereign immunity unless Congress specifically allows it. . . . Here there is no waiver except to have the claims heard in the Court of Claims.

67 F.3d 118–119, n.13 (5th Cir 1995) (citations omitted). The court further stated, "'The law of this circuit is clear: the Court of Claims has exclusive jurisdiction of a Tucker Act claim in excess of $10,000.'" *Id*. (internal citation omitted). *See also U.S. Marine, Inc. v. U.S.*, 478 F. App'x 106, 110 (5th Cir. 2012) (finding that as counterclaim sounded in contract and was therefore "under jurisdiction of the Court of Federal Claims to the exclusion of any other court under any other jurisdictional statute, including § 1367") (citing *Wilkerson*, 67 F.3d at 118)).

Based upon the foregoing, the undersigned recommends that the Navy's motion to dismiss for lack of subject matter jurisdiction (doc. 40) be granted.

***OMO's Motion for Summary Judgment***

OMO has moved for summary judgment as to all of the plaintiff's claims (*see* doc. 44-1). Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

With regard to the breach of contract claim, OMO argues that the plaintiff cannot establish a breach of contract claim because she was an at will employee, and the at will nature of her employment was not altered by the emails surrounding her maternity

leave (doc. 44-1 at 16-20). As the plaintiff did not respond to OMO's arguments in support of summary judgment on the breach of contract claim (*see generally* doc. 47), it appears that she has abandoned this cause of action, and, therefore, summary judgment should be granted to OMO on the breach of contract claim.

The plaintiff alleges claims for race and pregnancy discrimination (*see* doc. 1). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). The Pregnancy Discrimination Act ("PDA") amended Title VII's definitions subsection to include language addressing pregnancy. *Young v. United Parcel Serv. Inc.*, 135 S.Ct. 1338, 1344–45 (2015) (citing 42 U.S.C. § 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions ...")). "'[A] claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII.'" *DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir.1998) (quoting *Boyd v. Harding Acad.*, 88 F.3d 410, 413 (6th Cir.1996)). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000).

A plaintiff can establish discrimination under Title VII "through direct and indirect evidence," also known as the "mixed-motive" framework or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), also known as the "pretext" framework. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir.2015). Under the "mixed-motive" framework, a plaintiff succeeds if he "demonstrates that [a protected characteristic] . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir.2005) (internal quotation marks

omitted).  This evidence must both display a "discriminatory attitude" and bear a causal relationship with the adverse employment action. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir.2006).  The plaintiff has made no such showing here.

Accordingly, the undersigned will consider the plaintiff's disparate treatment claims under the pretext framework.  To establish a *prima facie* case of discrimination, a plaintiff must prove that:  (1)  she was in a protected class; (2)  she was performing her job in a satisfactory manner; (3)  the employer took an adverse action against her; and (4)  the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 285 (4th Cir.2004) (en banc).  An inference of discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races, religions, or national origins, if those colleagues were treated more favorably under similar circumstances. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008).  In the case of a discharge claim, an inference of discrimination could be based on the plaintiff being replaced by someone from outside the protected class. *Ferguson v. Waffle House, Inc.*, 18 F.Supp.3d 705, 719 (D.S.C. 2014).

If the plaintiff can establish a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981) (this is a burden of production, not persuasion).  If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason by the defendant was not its true reason but was a pretext for discrimination. *Id*. at 253.  *See Reeves*, 530 U.S. at 147.

In opposition to the motion for summary judgment, the plaintiff argues that "two employees not in the protected class of race were treated more favorably in that they were allowed to keep their jobs despite going into LWOP status" (doc. 47 at 2). The plaintiff identifies Anne Wrenn-Bruton, who is white, as keeping her job although she took more than 40 hours unpaid leave while pregnant.  The plaintiff cites Ms. Wrenn-Bruton's

deposition, but did not submit the cited excerpt to the court (*see id*.). OMO submitted deposition testimony from Anna Bruton, who is presumably the same person referenced by the plaintiff (doc. 44-6, Bruton dep.). In the excerpt provided by OMO, Ms. Bruton states that she was not eligible for FMLA leave, but she was told that she would be given up to twelve weeks of unpaid leave for maternity leave (*id.* 9). She took about nine weeks of leave, and she thought that about seven to eight weeks of that time was unpaid leave (*id.*).

The plaintiff argues that Alexia Gugino was also allowed to take more than 40 hours LWOP and keep her job (doc. 47 at 4). The plaintiff further argues that she "was replaced as a dental hygienist by Alexia Gugino, who is white . . . and was not pregnant at the time of hire" (doc. 47 at 2-3). OMO states in its motion for summary judgment that the plaintiff "was replaced by a pregnant woman, so there is no evidence of pregnancy discrimination" (doc. 44-1 at 14). However, in a deposition excerpt provided in support of OMO's reply to the Navy's response, Ms. Godina, OMO's Human Resources Coordinator, testified that the plaintiff was replaced "by someone who was not pregnant," and that person was Alexia Gugino (doc. 58-4, Godina dep. 46, 64). It appears from a review of the evidence and the parties' filings that Ms. Gugino was not pregnant when she was hired, but she subsequently became pregnant and took LWOP during that time (doc. 58-4, Godina dep. 64; doc. 44-1, OMO m.s.j. (citing Gugino's time sheet and stating "other pregnant women exceeded LWOP under the same circumstances"); doc. 54 at 3, OMO reply (stating "she points to two white women who were allowed maternity leave by the Navy when she was not")). Ms. Gugino's time sheet for September 16, 2013, through September 27, 2013, shows that she took 80 hours of LWOP (doc. 44-10).

Viewing the evidence in a light most favorable to the plaintiff, the plaintiff can establish a *prima facie* case of both race and pregnancy discrimination by showing that white employees were allowed to take LWOP in excess of 40 hours and keep their jobs, and she was replaced by a white employee who was not pregnant at the time of her hire. However, the plaintiff has failed to present evidence upon which a reasonable factfinder

could determine that OMO's legitimate, nondiscriminatory reason for her discharge from employment was pretext for discrimination.

Importantly, "it is the perception of the decisionmaker [that] is relevant." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) (citation omitted). The overwhelming evidence of record set forth above shows that OMO believed – rightly or wrongly – that the Navy wanted the plaintiff replaced, and it had to do so in order to comply with the Navy contract. As set forth above, the plaintiff herself testified that OMO terminated her employment because the Navy determined that she had exceeded the leave that they were going to allow, and she had no reason to disbelieve OMO's reasons given for her termination (doc. 44-2, pl. dep. 100-102, 147). The parties spend much of their briefs arguing about whether OMO or the Navy was the plaintiff's employer and which entity had the power to terminate her employment. The plaintiff contends that this is a disputed issue of material fact. The undersigned disagrees. Assuming that OMO was the plaintiff's employer does not change the evidence before the court that OMO felt pressured by the Navy – pursuant to their contract – to terminate the plaintiff's employment, and this was the reason for her termination from employment.

In its opposition to OMO's motion for summary judgment, the Navy cites deposition testimony from Ms. Godina who testified that, as part of her duties, she discussed the plaintiff's situation with Mr. Omosowofa in January 2013. During that conversation, Mr. Omosowofa "said that she [the plaintiff] was going to come back and probably have issues with maybe childcare or maybe her child being ill. And she would probably have issues reporting to work and performing her duties. Therefore, it was best that we call her and let her know that the replacement, we were going to keep the replacement and let her go" (doc. 56-3, Godina dep. 28). As argued by OMO, taking Ms. Godina's testimony as true, Mr. Omosowofa's statement does not evidence either *race* or *pregnancy* discrimination. Further, Ms. Godina admitted she had no contact directly with the Navy about the plaintiff's termination (doc. 58-4, Godina dep. 29, 59-60, 67).

The plaintiff also points to OMO's failure to request a waiver as evidence of pretext (doc. 47 at 4). However, again, it is the perception of the decisionmaker that is relevant. Here, Mr. Omosowofa testified in his affidavit that "[i]t was obvious no waiver of the LWOP policy was being granted by the Navy officer," and it was clear OMO "really had no viable choice but to discharge [the plaintiff]" (doc. 44-20, Omosowofa aff. ¶¶ 7-9). The Navy contract defines "Commanding Officer" to include a department head (doc. 44-15 at 3, Navy contract ¶ C n.1). The evidence set forth above shows that the plaintiff's department head, LCDR Draude, a Navy employee, initially approved the plaintiff's leave in November 2012 (doc. 44-11). The emails from November 2012 and January 2013 show OMO's efforts to keep the plaintiff in her position despite the Navy's indicated concern about the plaintiff's excessive LWOP following this initial approval. The plaintiff has failed show any evidence to indicate Mr. Omosowofa did not honestly believe that the Navy wanted her to be terminated from employment and that no further waiver would be granted if requested. Based upon the foregoing, no reasonable jury could conclude that OMO's "'proffered explanation is unworthy of credence.'" *Holland*, 487 F.3d at 218 (quoting *Burdine*, 450 U.S. at 256).

Further weighing against any inference of race discrimination is the fact that the alleged decisionmaker with regard to the plaintiff's termination from employment, Mr. Omosowofa, is himself African-American. *See Ferguson*, 18 F. Supp.3d at 724 (noting that fact decisionmaker is member of the plaintiff's own protected class weakens any possible inference of discrimination) (citations omitted). Weighing against any inference of pregnancy discrimination is the fact that two other pregnant women were allowed to take LWOP in excess of 40 hours without being terminated from employment. The plaintiff has failed to identify any non-pregnant employees who were given more favorable treatment in this regard. Based upon the foregoing, the plaintiff has also failed to put forth sufficient evidence showing that discrimination on the basis of either her race or her pregnancy was the real reason for her discharge from employment. *See Holland*, 487 F.3d at 218. Based upon the foregoing, summary judgment is appropriate.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the Navy's motion to dismiss for lack of subject matter jurisdiction (doc. 40) be granted and that OMO's motion for summary judgment (doc. 44) be granted.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

December 12, 2016
Greenville, South Carolina