# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| ROSE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 9:14-cv-02841-DCN |
| ) | |
| THE OMO GROUP, INC., ) | |
| ) | |
| Defendant and ) | **ORDER** |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| U.S. DEPARTMENT OF THE NAVY, ) | |
| ) | |
| Third-Party Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Kevin F. McDonald's report and recommendation ("R&R"), ECF No. 63, that the court grant the motion to dismiss of third-party defendant U.S. Department of the Navy ("Navy"), ECF No. 40, and grant the motion for summary judgment of defendant and third-party plaintiff The OMO Group ("OMO"), ECF No. 44. For the reasons sets forth below, the court adopts the R&R, granting the Navy's motion to dismiss and granting OMO's motion for summary judgment. Additionally, the court adopts those portions of the R&R which are not inconsistent with this Order.

## I. BACKGROUND[1]

### A. Factual Allegations

The R&R ably recites the relevant facts, and it is unnecessary to review the details of the complaint and depositions that constitute the factual record to this point. In short, Rose Brown ("Brown"), an African-American female, began working in January 30, 2012 as a dental hygienist for OMO, a federal contractor that provides dental workers for the Navy's dental clinic at Parris Island in Beaufort, South Carolina. During Brown's pregnancy, she was rushed to the hospital in an ambulance and had emergency surgery to remove cysts on her ovaries, losing an ovary in the process. ECF No. 66, Ex. 4. She was later ordered to bedrest for the remainder of her pregnancy due to preeclampsia and gestational hypertension. ECF No. 66, Ex. 4 at 3.

Brown filed a complaint against OMO on July 15, 2014, alleging pregnancy, race, and sex discrimination[2] in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, along with a state law claim for breach of contract. ECF No. 1. On January 16, 2015, OMO filed an amended answer and third-party complaint alleging causes of action for breach of contract and for indemnity against the Navy. ECF No. 18. The Navy filed a motion to dismiss for lack of jurisdiction on May 24, 2016, arguing that contract claims in excess of $10,000 can only be heard in the Court of Federal Claims under the Tucker Act. ECF No. 40 at 2.

---

[1] Unless otherwise noted, the following background is drawn from the R&R.
[2] The R&R analyzes only Brown's pregnancy and race discrimination claims. It does not analyze the sex discrimination claims. Brown did not object to this analysis, so the court adopts the R&R's interpretation of Brown's complaint.

This case is now before the court on the magistrate judge's R&R, which recommends that the court: (1) grant the Navy's motion to dismiss for lack of subject matter jurisdiction, and (2) grant OMO's motion for summary judgment. ECF No. 63 at 16. Brown filed timely objections to the R&R, ECF No. 65, and OMO filed a response, ECF No. 67. The Navy also filed a response, ECF No. 66. The matter is now ripe for the court's review.

## II. STANDARDS OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255.

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., No. 6:12-cv-183, 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012). Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1.

### III.   DISCUSSION

The R&R found that Brown's employment discrimination claim fails because OMO's perception that it was being pressured by the Navy to terminate Brown's employment was a legitimate, nondiscriminatory reason for her termination. ECF No. 63 at 14. All of Brown's objections go to the R&R's recommendation that the court grant OMO's motion for summary judgment as to the employment discrimination claim—she makes no objections to the R&R's recommendation that the court grant summary judgment on either claim. In the absence of a timely filed objection, a district court need

4

"only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (internal citations omitted). Upon review, the court is satisfied that there is no clear error in the magistrate judge's determination of the breach of contract claim and adopts the R&R's reasoning as to the breach of contract claim.

There were also no objections filed against the magistrate judge's recommendation that the court grant the Navy's motion to dismiss for lack of subject matter jurisdiction. Having carefully reviewed the Magistrate Judge's detailed R&R, relevant case law, and the relevant portions of the record, the court is satisfied that there is no clear error and adopts the R&R's reasoning as to the motion to dismiss.

### A.     OMO's Motion for Summary Judgment

Brown filed a number of objections to the magistrate judge's recommendation that the court grant OMO's motion for summary judgment, arguing that the magistrate judge erred by: (1) finding that OMO's perception that it was being pressured by the Navy to terminate Brown's employment was a legitimate, nondiscriminatory reason for her termination; (2) finding that no reasonable jury could conclude that OMO's proffered explanation is unworthy of credence; (3) finding that because the employment decision maker, President and Chief Executive Officer of OMO Oluagba Omosowofa ("Omosowofa"), is of the same race as Brown, the termination of Brown was not discriminatory; (4) finding that Brown failed to identify any non-pregnant employees who were given more favorable treatment by being allowed to take more than forty hours of leave without pay ("LWOP"). ECF No. 65 at 1. The court addresses each objection in turn.

> 1. **OMO Group's perception that it was being pressured by the Navy to terminate Brown's employment is not a legitimate, nondiscriminatory reason for her termination**

Brown argues that the R&R erred in finding that OMO articulated a legitimate, non-discriminatory reason for terminating Brown—its belief that the Navy wanted Brown replaced due to her leave without pay status because Brown had exceeded her allowable 40 hours of LWOP—for terminating Brown. ECF No. 63 at 14. The court disagrees.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135 (2000). A plaintiff can establish discrimination under Title VII "through direct and indirect evidence" (i.e., the "mixed-motive" framework) or through the burden-shifting framework of McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) (i.e., the "pretext" framework). Brown must establish causation at two different stages of the McDonnell Douglas framework—in making a prima facie case and in proving pretext. Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). The R&R found that Brown had proven a prima facie case of employment discrimination, so the court focuses its analysis on the second prong of the framework—if OMO articulated a legitimate, nondiscriminatory reason for the adverse employment action. ECF No. 63 at 13.

The standard within the Fourth Circuit is strict—under the prevailing McDonnell Douglas test, if the defendant shows a legitimate, non-discriminatory reason for its actions, the plaintiff has the burden to produce evidence that the defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the

actions of the defendant were really based on the plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802–05; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252 (1981). When an employer articulates a legitimate, non-discriminatory basis for its action, the court does not "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [adverse employment action]." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000). In the briefing for the summary judgment motion, OMO attaches communications with the Navy, including a Navy memo and a Navy email where the Navy quoted provisions in the contract with OMO outlining the specifics of its LWOP policy. ECF No. 44 at 14. The court agrees with the R&R that this is enough for OMO to show a legitimate, non-discriminatory reason for its termination of Brown. Reasonable or not, OMO believed that its contract with the Navy—which outlined termination policies for those workers who took excessive LWOP—and the Navy's communications via email, made it "obvious" that no waiver of the LWOP police was going to be granted and that OMO had to terminate Brown. ECF No. 44 at 4.

Since OMO has offered a legitimate reason for Brown's termination, the burden then shifts to Brown to show that OMO's stated reason was a pretext for unlawful discrimination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). She has failed to do so. Although Brown does not frame her arguments as such, the court reviewed the record to determine if there are any arguments to rebut OMO's proffered justification and demonstrate pretext. OMO's position statement filed with the Equal Employment Opportunity does offer additional reasons for Brown's termination—that Brown was terminated because she had performance problems including occasions where

7

Brown ignored email messages and phone calls from supervisors and "fail[ed] to be a team player." ECF No. 47, Ex. 1 at 6. However, the OMO position statement also includes an explanation of the LWOP system and how workers who take frequent LWOP reduce overall revenue for OMO, an explanation that conforms to OMO's proffered justification for Brown's termination. Id. During the pendency of Brown's LWOP, the Navy's Contracting Officers' Representative, John McDonald, sent OMO an email that "[s]ince Brown is on LWOP for more than 40 hours, are we assuming Ms. Gugino will be the next full time Dental Hygienist," and included as an attachment to the email the portion of the contract between the Navy and OMO that stated any healthcare worker who "has been on LWOP status for a total of 40 hours" shall be replaced.[3] ECF No. 44, Ex. 16, Navy January 22, 2013 email.

Upon reviewing the record, the court finds that Brown has provided insufficient evidence that discrimination was, in fact, the reason for her termination. Instead, Brown simply states that "[the R&R's finding] would say that employers are permitted to discriminate if they simply claim 'they told me I had to.'" ECF No. 65 and 2. At the

---

[3] The court notes that OMO failed to take advantage of the waiver process, which would have exempted Brown from the LWOP policy. To explain this, Omosowofa testified that "[i]t was obvious no waiver of the LWOP policy was being granted by the Navy officer." ECF No. 63 at 15. The court makes no finding on whether OMO's belief that the Navy wanted Brown to be terminated is sensible, as it is not within the purview of the court to determine whether the decisionmaker's proffered nondiscriminatory justification is "wise, fair, or even correct." Hawkins, 203 F.3d at 279. Instead, "it is the perception of the decisionmaker which is relevant." Holland v. Washington Homes, Inc., 487 F.3d 208, 216 (4th Cir. 2007) (internal quotation marks and alteration omitted). From OMO's point of view, the Navy's communications indicated that the Navy wanted Brown terminated because of her excessive LWOP. There is plentiful evidence, including emails, deposition testimony, and memoranda attesting to the Navy's communications with OMO expressing displeasure with Brown's excessive LWOP. The court's inquiry into the relative merits of OMO's reasoning need go no further.

pretext stage of the McDonnell Douglas framework, Brown is required to show by a "preponderance of the evidence" that OMO's proffered explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000). When combined with OMO's legitimate reasoning for Brown's termination and Brown's failure to present any evidence that OMO's stated reason was pretextual, a reasonable juror would be "hard-pressed" to conclude that Brown established pretext. Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) (internal quotations omitted). See also Price v. Thompson, 380 F.3d 209, 216 (4th Cir. 2004) abrogated on other grounds by Zimmeck v. Marshall Univ. Bd. of Governors, 632 F. App'x 117 (4th Cir. 2015), cert. denied, 136 S. Ct. 2021 (2016)) (affirming district court's grant of summary judgment to employer where evidence of pretext was ambivalent); Tinsley v. First Union Nat. Bank, 155 F.3d 435, 444 (4th Cir. 1998) abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (affirming grant of summary judgment to employer in Title VII case where "uncontested evidence establishe[d] that [the decisionmaker] honestly believed that [plaintiff] deserved to be discharged). Accordingly, the court finds that this objection is without merit.[4]

---

[4] OMO appears to also argue that the Navy is the entity that had true control over the hiring and firing decisions of OMO employees. Title VII does not allow for employers to claim indemnity as a defense for discrimination. See E.E.O.C. v. Blockbuster Inc., 2010 WL 290952, at *4 (D. Md. Jan. 14, 2010) ("The primary goal of Title VII to eradicate discriminatory conduct would be thwarted if Blockbuster were permitted to contract around its obligations and shift its entire responsibility for complying with Title VII."). While the ultimate holding in Blockbuster was about Title VII's bar on an employer's contractual claim for indemnity, the language is persuasive that the Congressional intent behind Title VII was to protect workers from discrimination—an intent that would be undercut by an employer engaging in discriminatory employment practices and defending its actions as directed by another entity. The court refuses to allow such an interpretation of Title VII.

### 2.     No reasonable jury could conclude that OMO's proffered explanation is unworthy of credence

Brown argues that there are "so many witnesses involved, and such a large volume of testimony" that a reasonable jury could "very well" find OMO's proffered nondiscriminatory explanation unworthy of credence. ECF No. 65 at 2. Like Brown's first objection, this objection also attacks the McDonnel Douglass framework's requirement that a plaintiff prove pretext. Under the McDonnell Douglas framework "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S., at 253. Here, Brown has failed to satisfy this burden—she includes no specific cites to the record to refute the emails, memoranda, and deposition testimony regarding the Navy's communications with OMO about Brown's excessive LWOP to support an inference that OMO's explanation was pretextual. Brown's general gesture at the "large volume of testimony" is insufficient to prove that a rational trier of fact could conclude that OMO's proffered reason for Brown's termination was pretext. Accordingly, this objection fails.

### 3.     Brown's termination was not discriminatory because Omosowofa is of same race as Brown

The R&R noted that Omosowofa is of the same race as Brown, and factored this into the finding that Brown's termination was not discriminatory. Brown objects to the R&R's finding that Omosofwofa being of the same race as Brown "weakened" Brown's discrimination claim. ECF No. 65 at 2. Courts, including this one, have found that the fact that the decisionmaker is a member of a plaintiff's protected class weakens a possible inference of discrimination. See, e.g., Reap v. Cont'l Cas. Co., 2002 WL 1498679, at

\*14 (D.N.J. June 28, 2002) (holding that the membership of the alleged discriminatory decisionmakers were in the same protected age group as the petitioner diminished "any possible inference" of age discrimination); Ferguson v. Waffle House, Inc., 18 F. Supp. 3d 705, 722 (D.S.C. 2014) (noting that where the decisionmaker is a member of plaintiff's own protected class "any possible inference of discrimination" is weakened) (internal citations and quotations omitted).  However, the R&R did not conclude that the only reason that Brown's termination was not discriminatory was because Omosowofa is of the same race as Brown—instead, it focused much of its analysis on the legitimate, non-discriminatory nature of Omosowofa's proffered explanation for Brown's termination.  As explained above, the court finds that the R&R properly found that Omosowofoa's proferred nondiscriminatory reason for terminating Brown was legitimate, and that Brown failed to fulfill her burden of showing pretext.  While the fact that Omosowofa is a member of Brown's protected race group diminishes an inference of race discrimination, it is not dispositive of whether discrimination occurred, and the R&R did not treat it as such.

Brown objects further that the magistrate judge failed to demonstrably appreciate that at the time of her termination Brown was a pregnant African-American woman.  In other words, Brown argues that the magistrate judge erred by not considering that Brown was at the intersection of two protected classes.  Title VII prohibits employers from discriminating against employees based on certain protected individual traits—race, color, religion, sex, or national origin.  42 U.S.C.A. § 2000e-2.  It also protects individuals against discrimination based on the combination or "intersection" of two or more protected classifications, even in the absence of evidence showing the defendant

discriminated solely on the basis of one protected classification. <u>Westmoreland v. Prince George's Cty., Md.</u>, 876 F. Supp. 2d 594, 604 (D. Md. 2012). The EEOC Compliance Manual states:

> Title VII prohibits discrimination not just because of one protected trait (e.g., race), but also because of the intersection of two or more protected bases (e.g., race and sex). For example, Title VII prohibits discrimination against African American women even if the employer does not discriminate against White women or African American men. Likewise, Title VII protects Asian American women from discrimination based on stereotypes and assumptions about them "even in the absence of discrimination against Asian American men or White women." The law also prohibits individuals from being subjected to discrimination because of the intersection of their race and a trait covered by another EEO statute—e.g., race and disability, or race and age.

EEOC Compliance Manual, Section 15: Race and Color Discrimination, at https://www.eeoc.gov/policy/docs/race-color.html (Last visited Feb. 22, 2017). Courts have explained that the "intersectional" discrimination theory applies to plaintiffs who have been discriminated against because of distinct stereotypes associated with persons belonging to two or more protected classes. See <u>Wis. Dept. of Workforce Dev.</u>, 690 F. Supp. 2d 765, 769–771 (E.D. Wis. 2010) ("It is sometimes mistakenly thought that the black male experience represents a mere racial variation on the white male experience and that black men suffer from discrimination only because they are black. Conceptualizing separate over-lapping black <u>and</u> male categories has sometimes interfered with the recognition that certain distinctive features of being black and male serve as the target for discrimination") (emphasis added).

All this being said, it is unclear here what, if any, error in the R&R's reasoning Brown is asserting based on the intersectional discrimination theory. An objection on the basis that intersectionality theory exists is insufficient to mount a specific objection

against the R&R—indeed, Brown makes no reference to any portion of the R&R that misapplied the intersectionality theory, nor does she reference any portion of the R&R that should have applied the intersectionality theory and failed to do so.  The court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate [judge]'s proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

  Brown also objects to the R&R on the basis that Omosowofa, who is originally from Nigeria, and Brown, who was born in the United States to an African-American father and a Panamian mother, do not share a common cultural background.  ECF No. 65 at 2.  Brown asserts that "a shared complexion does not guarantee racial solidarity, and for the purposes of an employment discrimination claim, it should be left to the jury to decide whether Mr. Omosowofa's biases or prejudices played a part" in Brown's termination.  Id.  The court takes into consideration the social science data that Brown attached to her objections showcasing the difference in attitudes and inter-group biases between African immigrants and African-Americans.  However, much like Brown's objection regarding intersectionality theory, the court is unsure what Brown is asking the court to do with this information.  Brown contends that it "should be left to the jury to decide whether [Omosowofa's] biases or prejudices played a part in [Brown's] termination," ECF No. 65 at 2, but as explained above Brown failed to put forth sufficient evidence showing that OMO's proferred legitimate explanation for terminating Brown was pretext.  The additional exhibits that Brown attaches to her objections are not sufficient to fulfill this evidentiary burden.

Additionally, a review of the briefing in the summary judgment motion reveals that Brown made no mention of the "social and cultural rift" between African immigrant and African-American communities before the magistrate judge. Courts have frowned upon objections to R&Rs that make new arguments that serve as a new basis for summary judgment. See, e.g., Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) (finding that requiring a district court to consider new arguments raised in objections would unfairly benefits litigants who change their tactics in response to an unfavorable recommendation from the magistrate); Murr v. United States, 200 F.3d 895, 902 n. 1 (6th Cir. 2000) (a party's failure to raise an argument before the magistrate judge constitutes waiver); Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) (finding that issues raised for the first time in objections are waived); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990–91 (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never reasonably raised before the magistrate."). Thus, Brown's failure to raise this argument before the magistrate judge serves as an independent basis to set aside her objection.

### 4. Brown failed to identify any non-pregnant employees who were given more favorable treatment by being allowed to take more than forty hours of LWOP

Brown's objection regarding the R&R's finding that Brown failed to identify any non-pregnant employees who were given more favorable treatment by being allowed to take more than forty hours of LWOP misunderstands the R&R. The R&R specifically finds that Brown has proven her prima facie case, noting that "white employees were allowed to take LWOP in excess of 40 hours and keep their jobs, and [Brown] was

replaced by a white employee who was not pregnant at the time of her hire." ECF No. 63 at 13. The R&R points to Alexia Gugino, Brown's replacement, who was not pregnant at the time that she was hired but who subsequently became pregnant and took 80 hours of LWOP during the time of her pregnancy. ECF No. 63 at 13. Additionally, the R&R states that Anna Wrenn-Bruton, a white dental hygienist, took more than 40 hours of unpaid leave while pregnant and was not terminated. ECF No. 63 at 12. It is at the pretext prong of the McDonnell Douglas test where Brown fails. As discussed above, the court finds that Brown has failed to provide sufficient evidence that OMO's articulated reasons for Brown's termination are false and that discrimination was in fact the reason for Brown's termination. Therefore, this objection fails.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the R&R, **GRANTING** the Navy's motion to dismiss and **GRANTING** OMO's motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 28, 2017**
**Charleston, South Carolina**